T.C. Memo. 2000-79

UNITED STATES TAX COURT

DOUGLAS L. HADSELL, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent*

Docket No. 2423-93.                          Filed March 7, 2000.

Douglas L. Hadsell, pro se.

John C. Meaney and Ralph W. Jones, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

GOLDBERG, Special Trial Judge:  This case is before the Court on remand from the Court of Appeals for the Ninth Circuit. Hadsell v. Commissioner, 107 F.3d 750 (9th Cir. 1997), vacating and remanding T.C. Memo. 1994-198.  Unless otherwise indicated,

     *    This opinion supplements our opinion in Hadsell v. Commissioner, T.C. Memo. 1994-198, vacated and remanded 107 F.3d 750 (9th Cir. 1997).

section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows:

| | | Additions to Tax | |
|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
| 1988 | $2,162 | $ 526.00 | $133.98 |
| 1989 | 4,238 | 1,059.50 | 286.43 |
| 1990 | 3,786 | 946.50 | 249.05 |

After concessions by the parties,[1] the issues for decision are: (1) Whether petitioner is entitled to the filing status of married filing jointly for the purposes of determining the amount of any liability for the 1990 taxable year; (2) whether petitioner is entitled to deductions for expenses incurred while working as a deckhand on a commercial fishing boat; (3) whether petitioner is entitled to deductions related to rental real property; (4) whether petitioner is entitled to casualty losses

---

[1] Petitioner concedes that he received unemployment compensation, wages, and compensation as an independent contractor in at least the amounts determined by respondent. We therefore deem the gross income and self-employment tax issues to be conceded by petitioner for the years at issue.

Respondent concedes that there was a mathematical error in the original determination as set forth in the notice of deficiency for the 1990 taxable year because petitioner was not given credit equal to one-half of the self-employment tax he owed for 1990. Accordingly, the deficiency for 1990 should be reduced by $127, with corresponding reductions in the secs. 6651 and 6654 additions to tax.

for the destruction of a boat and accompanying personal property; (5) whether petitioner is liable for additions to tax pursuant to section 6651(a)(1) for failing to file timely Federal income tax returns for the years at issue; and (6) whether petitioner is liable for additions to tax pursuant to section 6654 for failing to pay estimated taxes.

The stipulations and exhibits are incorporated herein by this reference. For convenience, we shall set forth only the facts necessary to clarify the ensuing discussion.

Prior to trial in Hadsell v. Commissioner, T.C. Memo. 1994-198 (Hadsell I), petitioner served subpoenas duces tecum by mail upon Detective Mike Menzies (Detective Menzies), an employee of the Newport Police Department, Zong Yan Yu,[2] petitioner's wife, and Lai Fong Lee, Zong Yan Yu's aunt and petitioner's former employer. Petitioner served the three subpoenas without tendering mileage and witness fees as required by Rules 147 and 148. None of the witnesses appeared at trial on October 14, 1993, and the Court refused to enforce the subpoenas because petitioner failed to tender the required mileage and witness fees.

---

[2] Zong Yan Yu was referred to as "Zong Gan Yu Hadsell" in Hadsell v. Commissioner, T.C. Memo. 1994-198, and in Hadsell v. Commissioner, 107 F.3d 750 (9th Cir. 1997).

Petitioner testified that he subpoenaed Detective Menzies in order to obtain his "tax records" which were in the possession of the Newport Police Department. Petitioner claimed that the Newport Police Department had two boxes of his "tax records" which could substantiate, among other things, petitioner's work-related expenses claimed for the years at issue.

In the first subpoena, petitioner directed that Detective Menzies, who at one time was custodian of the Newport Police evidence locker,[3] appear at trial and bring with him:

> Two (2) cardboard boxes with Miscelaneous [sic] Papers that you seized and described in Your Return to Search Warrant dated January 9th, 1992. And each and every item made from paper and/or paper products, including Reciepts [sic], photocopies, envelopes, photographs, Letters, Correspondences, Tax Papers, Books, Magazines, Folders, and all other things that you siezed [sic] made of paper or paper products.

The second and third subpoenas were served on Zong Yan Yu and Lai Fong Lee in order to establish: (1) Petitioner's marriage; and (2) petitioner's wage income at Lai Fong Inn, respectively.

Petitioner contended in Hadsell I that the Court's failure to enforce the subpoenas, despite the fact that he failed to tender the required mileage and witness fees, violated his

---

[3] The Court was informed at trial in Hadsell I on Oct. 14, 1993, that Detective Menzies no longer worked for the Newport Police Department and therefore was no longer the custodian of the records subpoenaed by petitioner.

constitutional right to a fair trial, specifically, that it violated his due process right of access to the courts. Petitioner argued that such fees should be waived in his case because he was indigent and was prevented from earning money because of his incarceration.

We concluded in Hadsell I that the Court had no authority to waive subpoena fees and that petitioner was not denied his constitutional rights even though the subpoenas were not enforced. See Hadsell v. Commissioner, T.C. Memo. 1994-198. We held:

> civil litigants * * * before this Court enjoy no constitutional right to have the Federal Government pay their litigation expenses, and that the party who summons a witness is responsible for paying the fees and mileage to which the witness is entitled under Rules 147 and 148(c).

Id.

The Court of Appeals for the Ninth Circuit, while not deciding whether Rule 147 is unconstitutional as applied to indigent litigants, stated:

> Hadsell did not have adequate alternatives for proving all of his claims. On the one hand, the tax court did not err by denying witness fees to Zong Gan Yu Hadsell, because Hadsell could testify as to the date of their marriage as readily as she could have. Nor did it err in denying fees to Lai Fong Lee, because her testimony was not essential to resolve the questions of whether certain expenses were business deductions or whether Hadsell had appropriately filed his tax returns. As to the seized tax records, on the other hand, Hadsell claims that they alone could substantiate his claim that he had indeed properly filed tax returns in the years in question.

* * * * * * *

Without having to declare [28 U.S.C.] section 1915 unconstitutional as applied to Hadsell, the tax court could have attempted to acquire these records in at least two ways. By relying on Federal Rule of Evidence 614(a), the court could have, on its own accord, called Detective Menzies and ordered him to bring with him Hadsell's tax records that were still in the possession of the Newport Police Department. * * * Alternatively, it could have granted Hadsell a continuance with the suggestion that he seek the return of the documents directly from the City of Newport, either through administrative channels or an action in state court.

Hadsell v. Commissioner, 107 F.3d at 753.

The Court of Appeals vacated our decision and remanded the

case in order for the Court to:

consider its power either to call Detective Menzies as a witness, bringing with him the requested tax documents, under Federal Rule of Evidence 614(a), or to continue the hearing to allow Hadsell an opportunity to obtain the documents directly.

Id. at 754.

In accordance with the mandate of the Court of Appeals, the

Court issued an order on June 3, 1997, ordering Newport Chief of

Police James Rivers (Chief Rivers) to have the Newport Police

Evidence Officer personally deliver to petitioner's Corrections

Counselor by June 30, 1997:

certain boxes of documents seized and described in 'Your Return to Search Warrant' dated January 9, 1992, and any other documents of Mr. Hadsell which may remain with the Newport, Oregon Police Department, which documents this Court has been advised are located in the Evidence Vault of the Newport, Oregon Police Department and are in the custody of James Rivers * * *

The Newport Police Evidence Officer, Detective David Thalman, delivered the papers to petitioner's corrections counselor on June 17, 1997, and later filed a document with the Court captioned:  "Return of Order From Newport, OR Police Dept., With Attached Inventory of Delivered Items".

On July 7, 1997, petitioner informed respondent that none of the documents returned by the Newport Police Department applied to his Tax Court case and that he believed that the police had failed to turn over all of the documents in their possession.

In a telephone conference between the parties and the Court on July 28, 1997, petitioner stated that he had again reviewed the documents delivered by the Newport Police Department and believed that there were some documents relevant to the tax years involved herein to which he wanted to stipulate.  The parties, by way of an Order from the Court, were urged to meet in an attempt to stipulate the documents to be submitted to the Court.

In an effort to determine whether the authorities involved with petitioner's criminal case still had some of petitioner's records in their possession, respondent, at the Court's request, obtained an affidavit from Mr. Stephen E. Dingle, who had acted as a special prosecutor for the Lincoln County District Attorney's Office when prosecuting petitioner's State criminal case.  The affidavit, filed with the Court on August 4, 1997,

stated that Mr. Dingle had not retained any records relating to petitioner's criminal prosecution.

Respondent also contacted Chief Rivers and requested that he "double check" the police evidence locker to ascertain whether the police had inadvertently retained any of petitioner's papers. Chief Rivers confirmed that the Newport Police had delivered all of petitioner's papers to petitioner's corrections counselor.

On September 17, 1997, petitioner filed a document which the Court treated as a motion to reopen the record. In that document petitioner stated:

> The Mandate of the Court of Appeals in this case is that Detective Menzies will be subpoenaed by the Court to Testify at a Trial. **Bingo!!!!** That is exactly what this Petitioner wanted in his first trial and was the basis for the entire appeal. There was **NO** other reason for the Appeal. Petitioner was [sic] Detective Menzies to appear in Person and testify under oath about what he has done with the missing two thirds of Petitioner['s] Papers, which happen to include the pertinent evidence that Petitioner wants presented to this Court * * *

On November 5, 1997, the Court issued an order setting the case for further proceedings "in accordance with the mandate of the United States Court of Appeals for the Ninth Circuit".

A trial was held on January 30, 1998, to permit petitioner to introduce additional evidence relating to his tax liability for the years at issue. The Court also made Detective Menzies and Detective Steven L. Etter (Detective Etter) of the Salem

Police Department[4] available to petitioner at the trial.  Another witness, Detective David Thalman, was recovering from open heart surgery and was unable to appear.

Both Detective Menzies and Detective Etter testified concerning the papers which had been in the custody of the Newport Police Department.  The witnesses testified as to the collection, custody, and eventual delivery of the papers to petitioner's corrections counselor.

During the course of the hearing it was established that the papers had originally been seized by the police from a storage room at the Port of Newport, Oregon, on January 9, 1992, as evidence for use in petitioner's State criminal trial.  The papers had originally been stored on a boat previously owned by petitioner, but had been moved to a storage room around the time the boat was destroyed.  It is not known who initially removed the records from the boat and put them in the storage room.

The papers, contained in two cardboard boxes, were placed in the evidence locker of the Newport Police on January 9, 1992. They were later transferred to a single cardboard box on May 3, 1996, and, as stated above, were delivered to petitioner's

---

[4]    Detective Etter had previously worked for the Newport Police Department and had also served as the officer "second in charge of the evidence locker".

corrections counselor on June 17, 1997, pursuant to an Order of the Court.

At the trial on January 30, 1998, petitioner testified that the papers delivered by the Newport Police included receipts which would substantiate his claimed deductions for the years at issue, but that he did not bring the receipts to trial because he "didn't know that that's what we were going to be dealing with today". A recess was called, and petitioner was excused to retrieve the documents from the prison law library.

Petitioner returned with a voluminous amount of receipts which he claimed were from the 1988, 1989, and 1990 taxable years. The receipts, in no particular order, were all thrown together in a box. Petitioner had made no attempt to organize the receipts in any manner, even though he conceded that he had received the receipts "Three or four months, or six months" prior to the evidentiary hearing.[5]

The Court requested that respondent assign a revenue agent to meet with petitioner and ascertain whether petitioner had receipts which could substantiate additional business deductions which had not been allowed in Hadsell I. In order to facilitate such an examination, the Court instructed petitioner to organize

---

[5] In fact, since the documents were part of the records delivered by the Newport Police Department on June 17, 1997, petitioner had possession of the records for over 7 months.

his receipts by tax year, activity, and type of deduction claimed. Petitioner promised to cooperate with the examination "100 percent". The Court then ordered that the record be held open for 60 days to allow an examination of petitioner's receipts.

On March 3, 1998, one of respondent's revenue agents contacted petitioner by phone and explained to petitioner how to organize his receipts in order to facilitate the examination. On March 5, 1998, the agent visited petitioner and attempted to examine his receipts for the years at issue.

The agent found that petitioner had failed to organize his receipts in any manner and was totally unprepared for the examination. The agent explained to petitioner that he was acting pursuant to a deadline set by the Court and suggested that they reschedule the examination so that petitioner could properly prepare. Petitioner declined to meet with the agent again and told the agent that he would be unable to organize the receipts before the expiration of the Tax Court deadline because he was appealing his criminal conviction and needed all of his time to work on the appeal.

The agent decided to give petitioner time to reconsider his decision and scheduled another call with petitioner for March 11, 1998. When the agent phoned on that date, however, petitioner

refused to reschedule the examination and abruptly ended the phone call.

In an Order dated May 7, 1998, the Court ordered petitioner to meet with a revenue agent in order to complete the examination of petitioner's receipts. Pursuant to that Order, respondent's agent again attempted to phone petitioner on June 8, 1998, but petitioner refused to take the call. Petitioner alleged that the agent had treated him rudely during the previous visit and demanded that another agent be assigned to the examination. Petitioner later informed the Court during a conference call on November 6, 1998, that he had destroyed his receipts after originally meeting with the agent on March 5, 1998.

In light of petitioner's allegations that he had destroyed his receipts, the Court ordered petitioner to file a status report with the Court by December 9, 1998, setting forth the facts surrounding petitioner's destruction of his tax records. Petitioner refused to comply with the Order but stated in later filings with the Court that he had destroyed only a portion, not all, of the receipts. The record in this case was closed on June 28, 1999, more than 1 full calendar year after petitioner refused to meet with respondent's agent.

The Court has made every attempt to accommodate petitioner in this case; however, the record is clear that petitioner has

failed to respond to any of our Orders and has abused the judicial process of the Court.

Having endeavored to comply with the mandate of the Court of Appeals for the Ninth Circuit by calling Detective Menzies as a witness and by providing petitioner with the tax documents previously in the possession of the Newport Police Department, we now address again the following issues in turn.

1. <u>Petitioner's Filing Status</u>

Respondent calculated deficiencies for each of the years at issue based upon single filing status. While petitioner concedes that he was not married in either 1988 or 1989, he contends that he was married twice in 1990 and is therefore entitled to claim married, filing jointly status for the 1990 taxable year based on at least one of his marriages.

Petitioner testified that he divorced Yu Fang Wang, his first wife, on November 12, 1990, and married his second wife, Zong Yan Yu, in China on November 11, 1990. Zong Yan Yu did not come to the United States until May 30, 1991.

A taxpayer's filing status is determined as of the close of the taxable year, and a taxpayer legally separated from his spouse under a decree of divorce shall not be considered married. See secs. 6013(d)(2), 7703(a)(1). Petitioner concedes that his marriage to Yu Fang Wang, his first wife, ended in divorce on November 12, 1990, and that he was not married to her at the

close of the taxable year.  See secs. 6013(d)(1)(A), 7703(a)(1).

Though petitioner contends that he is entitled to claim married, filing jointly status for the 1990 taxable year based on at least one of his marriages, he has also argued that his second marriage, which took place in China on November 11, 1990, was not legitimate.  Petitioner stated that he married Zong Yan Yu on November 11, 1990, but conceded that he was not sure that the marriage was valid because his divorce from Yu Fang Wang did not become final until November 12, 1990.  In addition, petitioner stated in his original petition, filed with this Court on January 29, 1993:  "Lai Fong Lee's family bribed the marriage officer for a fake marriage [between petitioner and Zong Yan Yu] which was against the laws of China."  Petitioner also testified as follows at the trial on January 30, 1998:  "I have a decree now that says we [petitioner and Zong Yan Yu] were never married".

In any event, section 6013(a)(1) provides that no joint return shall be made if either spouse at any time during the taxable year is a nonresident alien.  According to petitioner's testimony, Zong Yan Yu did not reside in the United States during the 1990 taxable year.  In addition, petitioner conceded that Zong Yan Yu did not execute a joint income tax return for the 1990 taxable year.  Therefore, based on the record, we hold that petitioner is not entitled to claim married, filing jointly

status for the 1990 taxable year.  Respondent is sustained on this issue.

2.  Whether Petitioner Is Entitled to Deductions for Expenses Incurred While Working as a Dockhand on a Commercial Fishing Boat

Pursuant to Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we are permitted to estimate expenses when we are convinced from the record that the taxpayer has incurred such expenses.  In Hadsell I, we found that petitioner was entitled to deduct $750 as business expenses attributable to his fishing activity for each year of the years at issue.

At trial on January 30, 1998, petitioner failed to adduce any additional evidence substantiating his claimed expenses. Therefore, we do not change our previous finding that petitioner is entitled to deduct $750 as business expenses attributable to his fishing activity for each year of the years at issue.

3.  Deductions Related to Rental Property

Petitioner contends that he is entitled to deduct expenses with respect to rental real property he purchased in 1989 and also claim a casualty loss for items he had stored on the rental property which were sold by the tenants.

In Hadsell I, we found that petitioner's testimony concerning his claimed expenses and casualty losses was vague and unsupported and that we had no basis to allow petitioner to claim either a rental property expense or casualty loss for the years

at issue.  At trial on January 30, 1998, petitioner failed to adduce any additional evidence substantiating his claimed deductions.  Therefore, we do not change our previous finding that we have no basis to allow petitioner to claim either rental real property expenses or casualty losses for the years at issue. Respondent is sustained on this issue.

4.  <u>Casualty Losses for a Boat and Personal Property That Were Destroyed</u>

At trial in Hadsell I, petitioner testified concerning a boat he purchased in either 1986 or 1987 which was later destroyed.  Petitioner also testified that he incurred a casualty loss for personal property stored on the boat when it was destroyed.  Petitioner concedes that the boat at issue, and any personal property stored aboard, was destroyed in 1992.  Since petitioner's loss did not occur during the years at issue, any casualty loss deduction to which petitioner might be entitled with respect to either the boat or personal property stored on the boat when it was destroyed would not be allowable in any of the years at issue in this case.

5.  <u>Additions to Tax for Failure To File a Timely Return</u>

Section 6651(a)(1) imposes an addition to tax for failure to file a timely tax return.  The addition to tax is equal to 5 percent of the amount of the tax required to be shown on the return if the failure to file is not for more than 1 month.  See

sec. 6651(a)(1). An additional 5 percent is imposed for each month or fraction thereof in which the failure to file continues, to a maximum of 25 percent of the tax. See id. The addition to tax is imposed on the net amount due. See sec. 6651(b). The addition is applicable unless a taxpayer establishes that the failure to file was due to reasonable cause and not willful neglect. See id.

Petitioner testified that an accountant prepared petitioner's Federal and State income tax returns for the 1988, 1989, and 1990 taxable years and that he mailed the returns sometime in 1991.

To support his testimony, petitioner submitted copies of his Federal and State income tax returns for the 1988 and 1989 taxable years along with a bill dated August 31, 1990, from an accountant for the preparation of those returns.

In addition, petitioner filed a motion to extend the time to file his brief on January 27, 1994, and attached to the motion a photocopy of a money order dated September 12, 1990, made payable to the "Internal Rev. Service" in Ogden, Utah, in the amount of $515.93. Petitioner, however, never attempted to enter the money order into evidence, and nothing on the money order indicates what the payment was for, or for which taxable year it applied.

Petitioner's testimony as to the filing of his returns for the years at issue is also contradictory. While refusing to

concede that he may have failed to timely file his tax returns,
petitioner stated at trial in Hadsell I:

> Well, you know, for a long time the IRS sent me those
> inquiring letters, and I've always had a philosophy;
> ignore them and they'll go away, but they didn't.  They
> were persistent.  So I made a mistake.  I wrote to
> them, and eventually the inquiring letters became
> demanding, They wanted money. * * *

Additionally, when asked by the Court whether he filed a
1990 Federal or Oregon State income tax return or whether the
timing of his arrest interfered with the filing of such return,
petitioner replied:  "And, you know, I can't answer that".

Upon the basis of the record, we find that petitioner has
not shown that he timely filed his Federal income tax returns for
the years at issue, and, therefore, hold that petitioner is
liable for additions to tax pursuant to section 6651(a)(1).
Respondent is sustained on this issue.

6.  <u>Additions to Tax for Failure To Pay Estimated Income Taxes</u>

Section 6654(a) imposes an addition to tax where prepayments
of tax, either through withholding or estimated quarterly tax
payments during the year, do not equal the percentage of total
liability required under the statute.  However, the addition to
tax is not imposed if the taxpayer can show that one of several
exceptions applies.  See sec. 6654(e).

It is undisputed that petitioner received both unemployment compensation and compensation as an independent contractor for the years at issue and failed to make estimated tax payments.

Upon the basis of the record, petitioner does not qualify for any of the exceptions listed in section 6654(e).  Therefore, we hold that he is liable for the additions to tax pursuant to section 6654(a) for the 1988, 1989, and 1990 taxable years. Respondent is sustained on this issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.